## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN; JOSH SHAPIRO, in the official capacity of as Governor of the Commonwealth of Pennsylvania,

*Plaintiffs-Appellees*,

v.

PRESIDENT DONALD J. TRUMP, in the official capacity as President of the United States; UNITED STATES DEPARTMENT OF JUSTICE, TODD BLANCHE, in the official capacity as Acting U.S. Attorney General of the United States; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in the official capacity as Secretary of the United States Department of Homeland Security; UNITED STATES SOCIAL SECURITY ADMINISTRATION; FRANK BISIGNANO, in the official capacity as Commissioner of the United States Social Security Administration; UNITED STATES POSTAL SERVICE; DAVID STEINER, in the official capacity as Postmaster General and Chief Executive Officer of the Postal Service; DOUG TULINO, in the official capacity as Deputy Postmaster General, Chief Operating Officer and Chief Human Resources Officer of the Postal Service and Member of the Postal Service Board of Governors; AMBER MCREYNOLDS, in the official capacity as Chair of the Postal Service Board of Governors; DEREK T. KAN, in the official capacity as Vice Chairman of the Postal Service Board of Governors; RONALD STROMAN, in the official capacity as a Member of the Postal Service Board of Governors; DANIEL TANGHERLINI, in the official capacity as a Member of the Postal Service Board of Governors,

Defendants-Appellants.

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF

MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WISCONSIN; JOSH SHAPIRO, in the official capacity as Governor of the Commonwealth of Pennsylvania,
*Plaintiffs - Appellees,*

v.

STATE OF ALABAMA; STATE OF MISSOURI; STATE OF FLORIDA; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TEXAS,
*Interested Parties - Appellants,*

DONALD J. TRUMP, in the official capacity as President of the United States; UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, in the official capacity as Acting U.S. Attorney General; US DEPT. OF HOMELAND SECURITY; MARKWAYNE MULLIN, in the official capacity as Secretary of the United States Department of Homeland Security; SOCIAL SECURITY ADMINISTRATION; FRANK J. BISIGNANO, in the official capacity as Commissioner of the United States Social Security Administration; US POSTAL SERVICE; DAVID STEINER, in the official capacity as Postmaster General and Chief Executive Officer of the Postal Service; DOUGLAS TULINO, in the official capacity as Deputy Postmaster General, Chief Operating Officer and Chief Human Resources Officer of the Postal Service and Member of the Postal Service Board of Governors; AMBER MCREYNOLDS, in the official capacity as Chair of the Postal Service Board of Governors; DEREK T. KAN, in the official capacity as Vice Chairman of the Postal Service Board of Governors; RONALD STROMAN, in the official capacity as a Member of the Postal Service Board of Governors; DANIEL MARK TANGHERLINI, in the official capacity as a Member of the Postal Service Board of Governors,
*Defendants.*

---

Appeals from the United States District Court
For the District of Massachusetts

---

**CONSENTED TO BRIEF FOR *AMICUS CURIAE* THE SOCIETY FOR RULE OF LAW IN OPPOSITION TO EMERGENCY MOTIONS FOR STAY PENDING APPEAL AND SUPPORTING APPELLEES**

---

*(Counsel listed on inside cover)*

NANCY A. TEMPLE
  *Of Counsel*
Katten & Temple, LLP
209 S. LaSalle Street Suite 950
Chicago, IL 60604

RICHARD BERNSTEIN
1st Circuit No. 1135512
  Counsel of Record
1875 K Street, NW
Washington, D.C. 20006
(301) 775-2064
Rbernsteinlaw@gmail.com

July 13, 2026

Counsel for *Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amicus* The Society for the Rule of Law and Democracy, Inc., doing business as The Society for the Rule of Law, does not have a parent corporation, is not a publicly traded company, and no publicly held corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT…………………………………….. i

TABLE OF CONTENTS………………………………………………………. ii

TABLE OF AUTHORITIES…………………………………………………….. iii

INTEREST OF *AMICUS CURIAE*…………………………………………… 1

INTRODUCTION AND SUMMARY OF ARGUMENT………………………. 1

ARGUMENT……………………………………………………………. 2

    I.      Recent Supreme Court Cases Establish Standing and Ripeness…... 2

    II.     The Constitution And Federal Statutes Render Section 3(b) Without Any Valid Application……………………………………….. 5

           A.    NVRA…………………………………………………….. 6

           B.    HAVA…………………………………………………….. 7

           C.    39 U.S.C. §401(2)……………………………………….. 10

CONCLUSION……………………………………………………….. 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) .......................................................................................... 2

*Bldg. & Const. Trades Dept., AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) .........................................................................3, 6

*Bost v. Illinois State Board of Elections*,
607 U.S. 71 (2026) .......................................................................................3, 4, 5

*Chamber of Commerce of the United States v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ........................................................................ 5

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) ........................................................................................ 4

*Esteras v. United States*,
606 U.S. 185 (2025) ........................................................................................ 8

*Hannegan v. Esquire, Inc.*,
327 U.S. 146 (1946) ........................................................................................11

*Heffernan v. City of Paterson*,
578 U.S. 266 (2016) ........................................................................................ 5

*Husted v. A. Philip Randolph Institute*,
584 U.S. 756 (2018) ........................................................................................ 6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........................................................................................ 3

*Purcell v. Gonzales*,
549 U.S. 1 (2006) ..........................................................................................2, 3

*Trump v. New York,*
592 U.S. 125 (2020)……………………………………………………..3

*United States v. Town of Thornapple*,
143 F.4th 793 (7th Cir. 2025) ......................................................................... 9

Statutes

18 U.S.C. §§241, 611, 1015, 3061(b)......................................................................11
39 U.S.C. §401 ....................................................................................................... 8
39 U.S.C. §401(2)..........................................................................................1, 9, 10, 12
39 U.S.C. §404(e)(2)..............................................................................................11
39 U.S.C. §§3001-18 ...........................................................................................10, 11
39 U.S.C. §§3001(a), 3003(a), and 3014(a)(2) ......................................................11

39 U.S.C. §3629........................................................................................ 7

52 U.S.C. §§10307, 20511 ........................................................................11

52 U.S.C. §§20506(a)(1), 20507(a)............................................................ 6

52 U.S.C. §20507(a)(4), (c)(1) ................................................................... 7

52 U.S.C. §§20507(d), 20984(a)(1)(B)(ii)................................................. 6

52 U.S.C. §20508(a)(1)-(3) ........................................................................ 6

52 U.S.C. §21081(a) ................................................................................... 9

52 U.S.C. §21081(b)(2)(E).......................................................................... 9

52 U.S.C. §21083(a)(1)(A) ......................................................................... 9

52 U.S.C. §21084........................................................................................7, 8

52 U.S.C. §21145(a) ...................................................................................7, 8

Other Authorities

91 Fed. Reg. 32,915 ................................................................................... 4

91 Fed. Reg 32,916. ................................................................................... 9

EO 14399....................................................................................................1, 11

H. R. Rep. No. 107-329 (2001) ................................................................. 8

Merriam-Webster Dictionary………………………………………………6

**INTEREST OF *AMICUS CURIAE***

*Amicus* The Society for the Rule of Law ("SRL") is a national non-profit, non-partisan membership organization of conservative lawyers, and others, who are committed to defending the separation of powers and federalism principles that govern elections.[1]  SRL has an interest in seeing that Executive Order ("EO") 14399 does not violate these principles.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This brief focuses on Section 3(b), (d) of EO 14399 ("Section 3(b)").  Part I shows that under recent Supreme Court precedents, there is already sufficient harm for standing and ripeness, particularly as the federal movants have stated that they may later argue that it would then be too close to the election to enjoin their illegal rules.  Part II shows that Section 3(b) is invalid in every application because it directs the USPS to exercise powers that the Constitution and Congress have withheld from the USPS.  The National Voter Registration Act of 1993 ("NVRA"), the Help America Vote Act of 2002 ("HAVA"), and 39 U.S.C. §401(2) withhold from the USPS *any* regulatory role concerning any voting list or modifying any voting system.

---

[1] All parties consented to filing this brief.  *Amicus* states that no counsel for any party authored this brief in whole or in part, and that no entity, aside from *amicus* and its counsel, made any monetary contribution toward the preparation or submission of this brief.  The brief does not necessarily reflect the views of all of SRL's members.

# ARGUMENT

## I.  Recent Supreme Court Cases Establish Standing and Ripeness.

Under *A.A.R.P. v. Trump*, 605 U.S. 91 (2025), it would be reversible error to rule against standing or ripeness until the USPS issues a final rule.  This is because movants have stated they may argue that under *Purcell v. Gonzales*, 549 U.S. 1 (2006) (*per curiam*), it would then be too late to enjoin their final rule.  *A.A.R.P.* reversed lower courts and issued an injunction because the putative plaintiff class was "facing an imminent threat of severe, irreparable harm."  605 U.S. at 94.  This was because the government might argue, after it transferred detainees, that another legal principle rendered it too late for a federal court to order relief.  *See id.* at 95; *see also id.* at 93 (after transfer, "the Government *may* have argued, as it had previously argued [in a different case], that no U.S. court had jurisdiction to order relief") (emphasis added).  The possibility that the government might later argue that it was too late defeated the government's arguments in *A.A.R.P.* that now was too soon.

Just so here.  The movants argue here that this litigation is too soon.  But federal movants have stated that, "of course [they] can't and won't take off the table" the argument that after USPS issues the final rule, *Purcell* would make it too late for a federal court injunction before the 2026 elections.  *DSCC v. Trump*, No. 26-5193 (D.C. Cir.), Joint Appendix at 641 (filed June 17, 2026).  *Purcell* makes

2

the election context different from a normal EO in a non-election context.   Even in a non-election context, an EO with savings language is reviewable when there is any "reason to think that the usual mechanisms for seeking expedited review [of a final rule] would be inadequate." *Bldg. & Const. Trades Dept., AFL-CIO v. Allbaugh*, 295 F.3d 28, 33-34 (D.C. Cir. 2002) (quotations omitted).   In contrast, in *Trump v. New York*, the government and all Justices stated adjudication was available later.  592 U.S. 125, 134 (2020); *id.* at 135 (Breyer, J., dissenting).

Even if movants bindingly waived *Purcell*, *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), independently establishes standing and ripeness.  *Bost* instructed courts not to "channel . . . election disputes" over vote-counting towards election day.  *Id.* at 80.  The Supreme Court has noted the similarity between the imminence component of standing and ripeness.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007).

Under *Bost*, plaintiffs who "have an interest in a fair process" consequently "suffer [harm] *when* the process departs from the law."  607 U.S. at 77 (emphasis added).  Accordingly, relief should be granted promptly when government officials announce illegal rules that would "govern the counting of votes in [candidates'] elections," including by the possibility of "discarding of lawful ones."  *Id.* at 77-78, 82.  Here, already "the process [has] depart[ed] from the law."  *Id.* at 77.  *Infra*, Part II.

Section 3(b)(iv) requires that the USPS rule "*shall* include" that the "USPS *shall provide* each State with a list of individuals (Mail-In and Absentee Participation List) who are *enrolled* with the USPS . . . for mail-in and absentee ballots provided by such state …."  (Emphases added.)  Most important, Section 3(b)(iii) further mandates that "the USPS *shall not transmit* mail-in or absentee ballots from any individual unless those individuals have been *enrolled* on a State-specific [Mail-In and Absentee Ballot Participation List]" (emphasis added) with the USPS.  Section 3(b)(i) and (iv) also bar transmitting ballots between state officials and voters when envelopes lack a unique bar code.  All this would preclude "the counting of votes."  *Bost*, 607 U.S. at 82.

Federal movants state *they* need a stay "to implement the Order as to the November 2026 general election."  Mot. at 19.  As the Supreme Court held in reversing a no-standing decision: "When as here a government seeks to justify its regulatory actions by, one the one hand, touting the consequences … while, on the other, maintaining that those same regulations are unreviewable because there are no consequences, courts can appropriately be skeptical."  *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 122 (2025).  The federal courts should not "exhibit a naivete from which ordinary citizens are free," *id.* (quotations omitted), especially given the President's asserted control of the USPS under unitary executive principles.  The USPS's NPRM confirms this control by mimicking all

4

the restrictions of Section 3(b) quoted above.  91 Fed. Reg. 32,915, 32,917-18 (June 2, 2026).

Delaying injunctive relief would encourage *every* administration, every two years, to announce invalid election rules early enough to induce some states and localities to pre-comply, but delay the formality of agency finality to forestall judicial review.  "[I]n the law, what is sauce for the goose is normally sauce for the gander."  *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016).  A future Democratic President could, for example, order the USPS to restrict mail-in ballots to and from rural counties because they have higher USPS costs and mail theft rates.  Fortunately, *Bost* requires relief "when the process departs from the law," 607 U.S. at 77, which already has occurred here.  *Infra*, Part II.

**II.     The Constitution And Federal Statutes Render Section 3(b) Without Any Valid Application.**

An executive order is *ultra vires* when it bypasses constitutional or "statutory limitations on governmental authority."  *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996).  The Elections and Electors Clauses constitute a rare area where the Constitution confers all powers on the states, subject to Congress conferring a specified power on a federal agency.  Thus, where as here a federal election statute expressly leaves a power with the states, Congress necessarily withholds that power from the executive branch.  *See Watson v. RNC*, slip op. at 21-22 (U.S. June 29, 2026) (federal election statute

extends federal law "so far as it is exercised, and no farther") (quotations omitted).

Movants previously and correctly admitted that savings language does not exempt from judicial review an EO that "is without any valid application." ECF 195, at 17 (quoting *Allbaugh*, 295 F.3d at 33). That is this case because USPS has no power to regulate concerning any voting list or voting system.

### A. NVRA.

As "enrolled" and "Participation List" in Section 3(b)(i)-(iv) indicate, each USPS Mail-In and Absentee Participation List would be a new voting list that the USPS would administer by blocking the counting of potential mail-in votes. Indeed, "enrolled" and "registered" are synonyms. *Enrolled*, Merriam-Webster, www.merriam-webster.com/dictionary/enrolled (last visited April 10, 2026); *Registered*, Merriam-Webster, https://www.merriam-webster.com/dictionary/registered (last visited April 10, 2026). NVRA, HAVA, and the Supreme Court describe voter lists as "voter *rolls*." 52 U.S.C. §§20507(d), 20984(a)(1)(B)(ii) (emphasis added); *Husted v. A. Philip Randolph Institute*, 584 U.S. 756, 781 (2018) (emphasis added).

But NVRA charges *state* agencies with "the registration of voters in elections for Federal office" and "the *administration* of voter registration for elections for federal office." 52 U.S.C. §§20506(a)(1), 20507(a) (emphasis added). 52 U.S.C. §20508(a)(1)-(3) limits the federal authority to issue "regulations" to the

Election Assistance Commission, and one subject – "a mail voter registration application form."

In particular, NVRA withheld all regulatory authority from USPS concerning voter lists.  52 U.S.C. §20507(a)(4), (c)(1) merely permits a *state* to use "change-of-address information supplied by the Postal Service" in meeting the state's obligations to make a "reasonable effort" to remove voters who changed residence from the state's voter list.  And 39 U.S.C. §3629 mandates that the USPS make available nonprofit rates to state and local officials for the mailings required or authorized by NVRA.  That's all.

**B. HAVA.**

52 U.S.C. §21084 provides that "a *State*" may "establish[] election technology and administration requirements that are more strict than the requirements under this subchapter" provided that the stricter "State requirements" are not inconsistent with the "Federal requirements" of HAVA "or any law described in section 21145 of this title."  (Emphasis added.)  52 U.S.C. §21145(a) not only lists those federal laws, it also limits *any* government entity's using other *unlisted* federal statutes to impose stricter requirements.  Section 21145(a) specifies that HAVA does not "supersede, restrict, or limit the application of" only "the following laws."  The "following laws" are six specified federal statutes— four voting statutes, including the Voting Rights Act and NVRA, and two

7

primarily non-election statutes.  *Id.*

Unlike these six specified statutes, Section 21145(a) *omits* 39 §U.S.C. 401 from the series of statutes that Section 21145(a) exempts from HAVA's superseding and restrictions and limits.  Under the "well established canon of statutory interpretation: *expressio unius est exclusio alterius*," *Esteras v. United States*, 606 U.S. 185, 195 (2025), 52 U.S.C. §§21084 and 21145(a) prevent the federal executive branch from establishing stricter requirements on HAVA topics by using 39 U.S.C. §401.  "Indeed, the *expressio unius* canon has particular force here because the" six preserved federal statutes in Section 21145(a) "constitute an 'established series,' such that any 'omission' from that series necessarily 'bespeaks a negative implication.'"  *Esteras*, 606 U.S. at 195 (citation omitted).   Congress here "exclude[d] another [provision] left unmentioned."  *Id.*  (quotations omitted).

Section 3's ordering USPS to use the excluded 39 U.S.C. §401 to establish stricter election technology and administration requirements violated both HAVA's text and its purpose that state and local administration of federal elections "must be preserved" so that it remains "*impossible* for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome."  H. R. Rep. No. 107-329, pt. 1, at 31-32 (2001) (emphasis added).  First, HAVA directs that the "*single*, . . . official . . .  statewide voter registration list" for each state be "defined, maintained, and administered at the State level."  52 U.S.C.

8

§21083(a)(1)(A) (emphasis added).  This "computerized list shall serve as *the single system* for storing and managing *the official list* of registered voters throughout the State" and "shall serve as *the official voter registration list* for the conduct of all elections for Federal office in the State."  *Id.* §21083(a)(1)(A)(i), (viii) (emphasis added).  But Section 3(b), and consequently the NPRM, illegally use 39 U.S.C. §401(2) to mandate a second federally-required voting list for each state, *i.e.*, a list of voters eligible to vote by mail.  As the NPRM confirms, a state cannot have mail-in voting unless the "state submitted a list" of those voters through a USPS portal, and "States would provide" the USPS with the "information" for "compiling the [USPS] lists."  91 Fed. Reg. at 32,916.  This confirms that Section 3(b) illegally directed the USPS to violate HAVA by establishing stricter election technology and administration requirements concerning voting lists.

Second, 52 U.S.C. §21081(a) establishes "requirements" for "[e]ach voting system used in an election for Federal office."  The term "voting system" includes "the practices and associated documentation used . . . to make available any materials to the voter (such as notices, instructions, forms, or paper ballots). " 52 U.S.C. §21081(b)(2)(E).  Every method used for "paper balloting" is a "voting system" under HAVA.  *United States v. Town of Thornapple*, 143 F.4th 793, 798-99 (7th Cir. 2025).

9

Certainly, the documentation and practices used for delivering paper ballots to mail-in voters, including the envelopes, constitute a "voting system." Here, under Section 3(b)(i)-(iv), the barcoded Outbound Federal Ballot Mail Envelopes, portal information, and Mail-in and Absentee Paticipation List, singly and combined, constitute a stricter "voting system" because they are documentation and practices used to make notices, instructions, forms, and mail-in paper ballots available to *fewer* voters. Federal movants admitted that Section 3(b) "would be imposing a new requirement with respect to election mail." ECF 181, at 65-66. Therefore, Section 3(b) illegally directed the USPS to promulgate regulations that establish stricter election technology and administration requirements concerning voting systems.

### C.  39 U.S.C. §401(2).

Section 3(b) orders additional incurable violations because 39 U.S.C. §401(2) bars the USPS from promulgating regulations that are "inconsistent with this title" or not "necessary in the execution of its functions under this title [or] such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." First, Section 3(b) illegally directs the USPS to provide regulations "inconsistent" with 39 U.S.C. §§3001-18, which make only specified items "nonmailable." "The postal laws make a clear-cut division between mailable and nonmailable material." *Hannegan v. Esquire, Inc.*, 327 U.S.

10

146, 152 (1946).  The "power" to render material nonmailable "has been zealously watched and strictly confined" by Congress. *Id.* at 156 n.18.  Title 39 renders nonmailable items deposited in violation of *only 12 specified* criminal-law sections of other Titles by expressly cross-referencing in 39 U.S.C. §§3001(a), 3003(a), and 3014(a)(2) that series of 12 criminal-law sections.  Under the *expressio unius* canon, *supra*, at 8, violations of other criminal-law sections that are *omitted* from these Title 39 nonmailable sections are excluded from USPS's authority to block delivery of mail.  The nonmailable provisions of 39 U.S.C. §§3001-18 omit any reference to the six sections from Titles 18 and 52 that EO 14399 and the NPRM cite as the basis for "prohibit[ing] non-citizens from registering to vote or voting." These six omitted sections are 18 U.S.C. §§241, 611, 1015, 3061(b), and 52 U.S.C. §§10307, 20511.  These six omissions confirm that Title 39 bars the USPS from promulgating regulations under which USPS refuses to deliver any mail-in ballots sent between state officials and voters.

Second, the providing and administering of voting lists and modifying a voting system are each a "nonpostal service" and thus barred by 39 U.S.C. §404(e)(2).  NAVA and HVRA establish that providing and administering voter lists is exclusively done by states, and modifying a voting system is the exclusive domain of a state legislature or Congress.  *Supra*, Part II.A-B.  *See Watson*, slip op. at 7-8, 15 n. 8 (applying the "most rudimentary rule" of "the related-statute

11

canon" to federal election law) (quotations omitted).

Third, Section 3(b) violates the bar in 39 U.S.C. §401(2) because no federal statute gives the USPS any "function" concerning voting lists or modifying a voting system. Nothing the USPS might do could evade these many, complete statutory bars.

**CONCLUSION**

The Court should deny the motions.

Dated: July 13, 2026

NANCY A. TEMPLE
  *Of Counsel*
Katten & Temple, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604

RICHARD D. BERNSTEIN
First Circuit No. 1135512
  Counsel of Record
1875 K Street, NW
Washington, D.C. 20006
(301) 775-2064
rbernsteinlaw@gmail.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.      That the foregoing Consented to Brief *Amicus Curiae* of The Society For The Rule of Law Institute in Opposition to Emergency Motions for Stay Pending Appeal and Supporting Appellees contains 2,570 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 365 in 14-point Times New Roman.

*/s/ Richard D. Bernstein*
Richard D. Bernstein
Attorney for *Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2026, I electronically filed the foregoing Brief *Amicus Curiae* of The Society For The Rule of Law Institute In Opposition to Emergency Motions for Stay Pending Appeal And Supporting Appellees, with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Richard D. Bernstein
Richard D. Bernstein
Attorney for *Amicus Curiae*